**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

MOHAMMAD BILAL ZAZAI,

Petitioner,

v. Case No. 3:26-cv-754-WWB-LLL

WARDEN, NORTH FLORIDA
DETENTION FACILITY, et al.,

Respondents.

---

**ORDER**

Petitioner, a native and citizen of Afghanistan, initiated this action by filing a pro se Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Doc. 1). He is proceeding on an Amended Petition. (Doc. 4). Federal Respondent (United States Attorney General) filed a Response (Doc. 8), and Petitioner filed a Reply (Doc. 10). Respondent Warden, North Florida Detention Center filed a Motion to Dismiss (Doc. 7), arguing he is not a proper respondent in this case. For the reasons set forth below, the Amended Petition will be denied and Respondent Warden's Motion to Dismiss will be denied as moot.

## I. BACKGROUND

Petitioner entered the United States in March 2024. (Doc. 8 at 1). Immigration and Customs Enforcement ("**ICE**") detained Petitioner that month and, because he lacked valid entry documents, officials issued an expedited removal order. (*Id.*). Petitioner has remained in ICE custody awaiting his removal since his March 2024 apprehension. (Doc. 4 at 4). When Petitioner unsuccessfully sought relief, his removal order became final on September 12, 2025. (*Id.*; Doc. 8 at 1). Petitioner argues that his prolonged detention

violates his due process rights under *Zadvydas v. Davis*, 533 U.S. 678 (2001), and asks that the Court order his immediate release. (Doc. 4 at 7).

## II. LEGAL STANDARD

Once an alien is ordered removed, immigration detention is governed by 8 U.S.C. § 1231. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 544 (2021) ("[Section] 1231 explains what to do if the alien is ordered removed."); *Deshati v. Noem*, No. 25-cv-15940, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025) ("The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231."). Pursuant to § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." During the removal period, detention is mandatory. 8 U.S.C. § 1231(a)(2)(A).

The Supreme Court has held that indefinite detention of aliens raises serious constitutional concerns. *Zadvydas*, 533 U.S. at 690–99. Once an order of removal is final, "an alien . . . may not be detained beyond 'a period reasonably necessary to secure removal.'" *Jennings v. Rodriguez*, 583 U.S. 281, 298–99 (2018) (quoting *Zadvydas*, 533 U.S. at 699). The *Zadvydas* Court found six months to be a presumptively reasonable period of detention for removable aliens awaiting deportation but held that such aliens could be "confine[d] until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 700–01; *see also Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period [from § 1231(a)(1)(A)] plus 90 days thereafter."). Thus, "in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six

months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale*, 287 F.3d at 1052. If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient evidence establishing that there is a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

Crucially, however, "the aliens [] challenging their detention [in *Zadvydas*] were ones for whom removal was 'no longer practically attainable.'" *Demore v. Kim*, 538 U.S. 510, 527 (2003) (quoting *Zadvydas*, 533 U.S. at 690). This fact left the petitioners in a "removable-but-unremovable limbo," *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 347 (2005), subjecting them to "indefinite and potentially permanent" detentions, *Zadvydas*, 533 U.S. at 696. Against this background, the *Zadvydas* Court "made it clear that the only issue being addressed '[was] whether aliens that the Government finds itself unable to remove [were] to be condemned to an indefinite term of imprisonment within the United States.'" *Akinwale*, 287 F.3d at 1052 n.2 (quoting *Zadvydas*, 533 U.S. at 695).

## III. DISCUSSION

ICE took Petitioner into custody in March 2024, and his removal order became final on September 12, 2025. (Doc. 4 at 7). Petitioner filed this case 194 days later, on March 25, 2026. (*Id.*). It is undisputed that Petitioner was in post-removal order ICE custody over six months at the time he filed this case. Thus, the Court must consider whether Petitioner has "provide[d] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale*, 287 F.3d at 1052. He has not. Petitioner simply contends that he has "been detained without reasonably foreseeable deportation" for over six months since his removal order became final and adds that a

total of two years in detention "has caused [him] a great deal of physical, emotional and mental distress." (Doc. 4 at 7). These statements alone do not establish that Petitioner has no significant likelihood of being removed in the reasonably foreseeable future. *See Akinwale*, 287 F.3d at 1052 (affirming dismissal of petition "because it had failed to present any facts indicating that the INS is incapable of executing [petitioner's] removal to Nigeria and that his detention will, therefore, be of an indefinite nature" (quotation marks omitted)).

Petitioner's Reply does help to augment the Amended Petition's conclusory statements, but "arguments raised for the first time in a reply brief are not properly before a reviewing court." *Vyazhevich v. United States Att'y Gen.*, No. 3:26-cv-32, 2026 WL 547962, at *2 n.1 (M.D. Fla. Feb. 27, 2026) (citing *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005)). In any event, had Petitioner satisfied his initial burden, Federal Respondent would rebut the presumption of there being no significant likelihood of removal in the reasonably foreseeable future.

Federal Respondent concedes that the process of removing an individual to Afghanistan "can be lengthy," and contends it has been working to obtain travel documents for Petitioner from Afghanistan. (Doc. 8 at 4). Removal to Afghanistan requires the Department of Homeland Security ("**DHS**") to present a "transportation letter request to the government of Afghanistan." (*Id.* at 4–5 (quotation marks omitted)). After review and approval, Afghanistan will issue a travel approval, at which time ICE can proceed with scheduling Petitioner's removal on a commercial carrier. (*Id.* at 5; Doc. 8-1 at 9). Once the travel approval is received, ICE will notify Petitioner of his removal to Afghanistan twenty-four hours prior to transferring him to the field office with responsibility

for the airport from which Petitioner will depart the United States. (Doc. 8 at 5; Doc. 8-1 at 9). Federal Respondent contends that while Petitioner's removal has not occurred, removal efforts are "underway" and nothing indicates Petitioner's removal is unlikely to be successful. (Doc. 8 at 5).

Federal Respondent attaches the Declaration of ICE Deportation Officer Bradford A. Rubinoff, who took over Petitioner's case on May 6, 2026. (Doc. 8-1 at 8). A week later, DHS initiated a transportation letter request to the Afghan government, beginning a process that "can last several months." (*Id.* at 9). Rubinoff also reviewed Petitioner's file and executed forms I-205, I-294, and I-229A, which were served on Petitioner, but which Petitioner refused to sign. (*Id.* at 8). Rubinoff states that ICE has continued Petitioner's detention because during his initial arrest in March 2024, officials searched his cell phone and discovered several videos of known suspected terrorists, images and videos of the 9/11 terrorist attacks, and images of subjects holding weapons with scenes of destruction in the background. (*Id.* at 8–9). "Several were captioned with statements declaring [that the actions depicted] were conducted in [] service to Allah." (*Id.* at 9). The search also revealed Petitioner recently and frequently called contacts linked to suspected terrorist organizations and had lived in Iran for two months prior to his entry into the United States. (*Id.*). Accordingly, Petitioner has been declared a suspected terrorist and has been treated as a High-Profile Removal subject. (*Id.*).[1] And, according to Rubinoff, ICE has "determine[d] that there is a significant likelihood of removal in the reasonably foreseeable future." (*Id.* at 10).

[1] Petitioner does not dispute the truth of these statements but contends that "[n]o security-related inadmissibility ground has been adjudicated and sustained on the record." (Doc. 10 at 7).

In Reply, Petitioner first contends that the United States does not maintain formal diplomatic relations with Afghanistan to ensure his safe removal. (Doc. 10 at 4). Noting that Federal Respondent describes a multi-step process that ICE must complete to effectuate Petitioner's removal to Afghanistan, Petitioner argues that Federal Respondent fails to "identify . . . [any] progress within that framework" "or any timeline by which travel approval is expected to issue." (Doc. 10 at 4, 8). Next, Petitioner argues that while Federal Respondent asserts that the United States has an agreement with Afghanistan to accept repatriation of its citizens, Federal Respondent has not produced any documents showing the agreement is real. (*Id.* at 5). Also, Petitioner notes that ICE has been in possession of his passport since March 2024, yet he has still not been removed. (*Id.*).

Even if the Court were to consider Petitioner's Reply arguments at step one of *Zadvydas*, the Amended Petition would be denied. The parties agree that Petitioner has been detained for over six months following his final order of removal and therefore that *Zadvydas*'s presumptively reasonable period has expired. The parties also agree that the existing framework for securing an alien's removal to Afghanistan is lengthy and burdensome. Petitioner suggests that the record fails to show that any progress has been made within that framework and specifically argues that Respondents fail to "identify any transportation letter [request] that has actually been submitted" to Afghanistan. (Doc. 10 at 4). However, the record reflects that just such a request was effectuated quickly after Rubinoff took over Petitioner's file in May 2026. (Doc. 8-1 at 9; *see also* Doc. 12 at 1). While Federal Respondent fails to explain why the removal process had not previously been initiated, Rubinoff declares that removal to Afghanistan can take several months.

That three months have lapsed since the process's delayed initiation hardly shows that Petitioner is "condemned to an indefinite term of imprisonment within the United States." *Akinwale*, 287 F.3d at 1052 n.2 (quoting *Zadvydas*, 533 U.S. at 695). Moreover, that the process of removing any alien to Afghanistan is (predictably) muddled does not stand to show that Petitioner's removal—either to Afghanistan or a third country—is "no longer practically attainable." *Zadvydas*, 533 U.S. at 690; *see also Akinwale*, 287 F.3d at 1052. Federal Respondent concludes its Response by stating that "nothing [in the Amended Petition] indicate[s] that" its efforts to remove Petitioner will be unsuccessful. (Doc. 8 at 5). Were the Court to consider Petitioner's Reply arguments, it would nonetheless remain in agreement.

## IV. CONCLUSION

For the reasons set forth herein, it is **ORDERED and ADJUDGED** as follows:

1. The Amended Petition for Writ of Habeas Corpus (Doc. 4) is **DENIED** and this case is **DISMISSED**.
2. Respondent Warden's Motion to Dismiss (Doc. 7) is **DENIED as moot**.
3. The Clerk shall enter judgment denying the Petition, terminate any pending motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, on August 14, 2026.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

C: Mohammad Bilal Zazai, A249374560
Counsel of Record